```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMIE L. ARONICA,

                Plaintiff,           1:17-CV-00927 (MAT)
        -vs-                         DECISION AND ORDER

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.
_____
```

**INTRODUCTION**

Jamie L. Aronica ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is reversed, and the matter is remanded for further proceedings consistent with this Decision and Order.

**PROCEDURAL BACKGROUND**

On August 16, 2012, Plaintiff protectively filed for DIB, alleging disability beginning January 1, 2012. (Administrative Transcript ("T.") 264-65). The claim was initially denied on

October 2, 2012, and Plaintiff timely requested a hearing. (T. 170-79). A hearing was conducted on December 5, 2013 in Buffalo, New York by Administrative Law Judge Robert T. Harvey (T. 77-100), who issued an unfavorable decision on February 11, 2014. (T. 144-57). Plaintiff timely requested review of the ALJ's decision by the Appeals Council. (T. 71-72). On June 5, 2015, the Appeals Council remanded Plaintiff's case for consideration of new and material evidence. (T. 158-59).

A second hearing was conducted on November 12, 2015, in Buffalo, New York by Administrative Law Judge Timothy M. McGuan ("the ALJ"). (T. 101-34). Plaintiff appeared with her attorney and testified. A vocational expert ("VE") also testified.

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (T. 36). At step two, the ALJ found that Plaintiff had the severe impairment of multiple sclerosis ("MS"). (Id.). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments. (T. 37). Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with

certain restrictions. (T. 38). At step four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work as a hairdresser. (T. 40). At step five, the ALJ found that Plaintiff can perform the requirements of occupations such as a mail room clerk (Dictionary of Occupational Titles ("DOT") No. 209.687-026, light, unskilled) and store checker (DOT No. 299.667-014, light, unskilled), with 115,110 and 18,410 positions, respectively, in the national economy. (T. 41-42).

The ALJ issued an unfavorable decision on March 16, 2016. (T. 31-46). Plaintiff timely requested review of the ALJ's decision by the Appeals Council and submitted additional records for it to consider. (T. 259). The Appeals Council denied Plaintiff's request for review on July 20, 2017, making the ALJ's decision the final decision of the Commissioner. (T. 1-7). Plaintiff then timely instituted this action.

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the

Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand is warranted for the following reasons: (1) the Appeals Council erred in declining to consider new and material evidence; (2) the ALJ improperly applied the treating physician rule; (3) the ALJ ignored substantial evidence supporting the conclusion that Plaintiff suffers from steroid-induced psychosis which would cause her to have frequent work absences; and (4) the ALJ failed to consider Plaintiff's visual impairment. Defendant argues that the ALJ did not commit legal error and that his determination was supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court finds that the Commissioner's decision

is legally erroneous and unsupported by substantial evidence. Therefore, the Court remands this matter to the Commissioner for further proceedings consistent with this Decision and Order.

I. **The Appeals Council Failed to Consider New and Material Evidence (Plaintiff's Argument 4)**

Plaintiff argues that the Appeals Council erred by not considering the additional evidence she submitted. (Plaintiff's Brief (Docket No. 7-1) ("Pl's Br.") at 26-29). On July 20, 2017, the Appeals Council rejected records from UBMD Physicians Group dated October 8, 2015, to October 20, 2015, because they were not new; records from UBMD Physicians Group dated December 1, 2015, to December 3, 2015, because they did not show a reasonable probability that they would change the ALJ's decision; and records from UBMD Physicians Group dated April 14, 2016, because they did not affect the ALJ's decision about whether the Plaintiff was disabled. (T. 2). The Appeals Council did not provide a reason for rejecting the June 7, 2016 MRI from Buffalo General Hospital.

A claimant can submit additional evidence to the Appeals Council. 20 C.F.R. § 416.1476(b)(1). The regulations require the Appeals Council to consider the additional evidence if it is new, material, and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1476(b)(2). Evidence "relates" to the disability period if it discloses "the severity and continuity of impairments existing before the earning requirement

-5-

date." Pollard v. Halter, 377 F.3d 183, 194 (2d Cir. 2004) (quoting Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S., 940 F.2d 40, 43 (2d Cir. 1991) (quotation marks omitted). "Materiality" requires, in addition, that there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimant's application differently." Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1998).

Plaintiff's treating physician, neurologist Dr. David Hojnacki, ordered her to undergo an MRI, which was performed on June 7, 2016, at Buffalo General Hospital. The Appeals Council provided no reason for declining to consider the record. This error deprives the Court of the ability to conduct a meaningful review. The Court cannot conclude the error was harmless since the June 2016 MRI demonstrates a continuation and worsening of Plaintiff's MS. In particular, the MRI shows seven new contrast-enhancing lesions in her cervical spine, twelve new T2 hyperintense lesions, and some new T1 hypointense contrast-enhancing lesions. (T. 22). The Appeals Council plainly erred in failing to provide a reason for rejecting this record.

The Appeals Council also rejected records from UBMD Physicians Group dated December 1, 2015, to December 3, 2015, and April 14, 2016, because they did not show a reasonable probability that they would change the ALJ's decision. However, the records show that Plaintiff still displayed symptoms of MS

-6-

and that her condition was not in prolonged remission. Her December 2015 MRI indicated that Plaintiff's abnormal MRI of her brain was "consistent with multiple sclerosis." (T. 49). Likewise, her April 14, 2016 visit, indicated that Plaintiff still displays symptoms of active MS. Plaintiff displayed a decreased ankle jerk; decreased sensation to pinprick, pain, and temperature in left hand and leg; and was assessed with muscle weakness. (T. 25-27). She also reported increased numbness and some vision changes. (T. 30). The records submitted by the Plaintiff demonstrate that her condition was not in prolonged remission. A possibility exists that these would have changed the ALJ's decision, as he assigned the most weight to the opinion of consultative examiner Dr. Hongbiao Liu, who examined the Plaintiff before she had multiple flare-ups of her MS. Therefore, the Appeals Council's rejection of these records was erroneous, and remand is required so the ALJ can consider these records.

The Appeals Council's rejection of records from UBMD Physicians Group dated October 8, 2015, to October 20, 2015, because they were not new, is supported by substantial evidence as they were already part of the ALJ's record. (T. 52-63, 561-68, 806-11). Therefore, the Appeals Council did not err with respect to these records.

## II. The ALJ Failed to Properly Apply the Treating Physician Rule (Plaintiff's Argument 2)

Plaintiff also contends that the ALJ did not properly apply the treating physician rule to the opinion of Dr. David Hojnacki, the neurologist who treated Plaintiff for MS. Pl's Br. at 21-24.

A treating physician's medical opinion will be given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. Shaw v. Carter, 221 F.3d 126, 134 (2d Cir. 2000). Generally, ALJs will "give more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [his or her] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give a treating source's opinion controlling weight, the regulations require that he or she consider a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion and its consistency with the record as a whole, the physician's area of specialization, and any other

relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(2)-(6).

Dr. Hojnacki, a neurologist specializing in the treatment of MS, diagnosed Plaintiff with MS in 2008. Since that time, Dr. Hojnacki has treated Plaintiff regularly at about six-month intervals. The most recent treatment note from Dr. Hojnacki is dated April 14, 2016. (See T. 24-30, 532-34, 541-42, 514-35, 550-54, 569-80, 599-615). Thus, Dr. Hojnacki has a treatment relationship with Plaintiff that spans approximately eight years.

On October 20, 2015, Dr. Hojnacki completed a Medical Source Statement Form indicating that Plaintiff's MS meets the requirements of Listing 11.09C in the Listing of Impairments, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, because she has "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, shown on physical examination, that results from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." (T. 797). The ALJ assigned Dr. Hojnacki's opinion "little weight," finding that it was not supported by "his own clinical findings and examinations [which showed] the claimant retained full muscle strength and normal motor function." (T. 39). The ALJ did not provide other reasons for discounting Dr. Hojnacki's opinion, apart from the alleged inconsistency with his own treatment notes. As discussed

further below, the Court finds that while there is an apparent inconsistency in some of Dr. Hojnacki's notes, the proper course of action was for the ALJ to recontact Dr. Hojnacki for clarification, rather than entirely discounting his opinion.

Here, under the "review of systems" portion of his treatment records, Dr. Hojnacki consistently noted that Plaintiff was experiencing muscle numbness and weakness, limb spasticity, and muscle pain. (E.g., T. 741 (April 28, 2014)). Dr. Hojnacki also consistently listed Plaintiff's "active problems" as including muscle weakness and lack of coordination. (T. 742). On examination, however, Dr. Hojnacki noted that Plaintiff's motor strength was normal in all muscle groups, and her coordination and gait was normal. (T. 745). Nevertheless, Dr. Hojnacki consistently issued a diagnosis of "[m]uscle weakness (728.87)." (T. 520, 531, 553, 565, 579, 603). The numerals "728.87" in parentheses refer to the ICD 9 code for "Muscle weakness-general."[1] The ICD 9 states that "[m]uscle weakness is a reduction in strength of any muscle(s) in the body" whose "[s]ymptoms are a loss of strength in the muscle even though *no detectable loss of strength* is present." (Id.) (emphasis supplied).

---

[1] Muscle Weakness ICD 9 Code, HEALTH RESEARCH FUNDING, https://healthresearchfunding.org/muscle-weakness-icd-9-code/.

An ALJ deciding a Social Security claim, "unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). An ALJ is obligated to further the develop the record when the evidence is insufficient or inconsistent. 20 C.F.R. § 404.1520b. The regulations that now control, 20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c), provide that re-contacting the treating physician is an option for correcting inconsistencies in the record, but that the ALJ "may choose not to additional evidence or clarification from a medical source if [the ALJ] know[s] from experience that the source either cannot or will not provide the necessary evidence." 20 C.F.R. § 404.1520b(c)(l). "Nonetheless, courts in the Second Circuit have concluded, citing these regulations, that the ALJ still has an obligation to re-contact the treating physician in some cases." Gabrielsen v. Colvin, No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *6 (S.D.N.Y. July 30, 2015) (citing Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (noting that, in a case where the treating physician's opinion was "remarkably vague," that "[a]t a minimum, the ALJ likely should have contacted [the treating physician] and sought clarification of his report," citing these regulations); other citation omitted). Accordingly, the change in the regulations does not mean that the ALJ here had no duty to re-contact Plaintiff's treating neurologist.

-11-

Here, the ALJ has made no finding, nor has the Commissioner made any argument, why Dr. Hojnacki "could not have resolved at least some of the inconsistencies at issue, the only circumstance in which the regulations explicitly provide that re-contacting the treating physician is inappropriate." Gabrielsen, 2015 WL 4597548, at *7 (citing 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)). Indeed, the ICD 9 diagnosis code for "muscle weakness-general" utilized by Dr. Hojnacki at each appointment suggests that there may be a medically valid explanation for the apparent inconsistency in his clinical notes. The Court has no doubt that, at the very least, Dr. Hojnacki is in the best position to resolve the ALJ's questions. See, e.g., Gabrielsen, 2015 WL 4597548, at *7 (finding that recontacting treating source was required to adequately develop record where "apparent inconsistencies between Dr. Johnson's own notes and her reports and a failure to 'document the signs and symptoms' in treatment logs, are precisely the types of inconsistencies that Dr. Johnson would best be able to resolve").[2]

---

[2] The Court notes that other treatment providers, similar to Dr. Hojnacki, have documented symptoms of muscle weakness. For instance, in an October 24, 2013, Visit Note Report from Home Care Services Organization, Anthony Palumbo, RN noted that Plaintiff was able to dress her upper and lower body without assistance, provided that clothing was laid out or handed to her; she was able to bathe herself in the shower or tub independently, but only with the use of devices. (T. 396). At another home visit on December 6, 2013, Plaintiff displayed numbness and decreased strength in the upper and lower bilateral extremities. (T. 827-28).

The Court finds that this error is not harmless since the only other opinion in the record from an acceptable medical source is from consultative physician Dr. Hongbao Liu, who examined Plaintiff once on September 24, 2012. However, this was between Plaintiff's documented MS exacerbations that occurred earlier in 2012 and then later in April, 2013; in June, 2013; in December, 2013; and April, 2014. (T. 392, 416, 513, 515, 521, 842). Dr. Liu stated, "[i]n my opinion, currently the claimant has no limitation for routine activities." (T. 376). Dr. Liu's opinion is vague insofar as he did not define what was meant by "routine activities." Moreover, Dr. Liu concluded with a caveat that Plaintiff's "multiple sclerosis [is] currently in remission stage. If multiple sclerosis relapses, then the limitation could be moderate to severe." (T. 376). By his own admission, Dr. Liu likely would have been issued a more restrictive opinion had he examined Plaintiff during one of the exacerbations of her MS.

**III. Failure to Consider Psychosis Caused by Steroid Injections (Plaintiff's Argument 1)**

Plaintiff also argues that substantial evidence supports a conclusion that she is unable to perform sustained work activities because she experiences psychosis and hallucinations when she receives steroid injections. (Pl's Br. at 19-21). She contends that on average she would have missed at least two work days per month between January 2012, and April 2014, because of steroid-induced psychosis or hallucinations. (Id. at 20).

Plaintiff received steroid injections for her MS mainly in 2013. (T. 532-34). In 2012, the Plaintiff received injections twice in January 2012; twice in March 2012; and three times in December 2012. (T. 529, 539, 542). In 2013, Plaintiff received three injections in January 2013, one injection in February 2013, three injections in April 2013, three injections in May 2013, one injection in June 2013, and July 2013, respectively; and two injections in August 2013, and September 2013, respectively. (T. 428-41, 442-63, 464-72, 515, 521, 526, 528). Plaintiff received one injection in February 2014, and three injections in April 2014. (T. 842, 877, 895). Plaintiff received no injections in 2015, but that was because Dr. Hojnacki declined to restart her on steroids after her course of Tysabri. (T. 567). Dr. Hojnacki noted that Plaintiff "has never been able to tolerate IV steroids as they have caused psychosis in the past. She also had severe cardiac palpitations and arrhythmias." (T. 567).

However, the records from Home Health Nursing Care, which administered the injections, noted throughout that Plaintiff could engage in activities as tolerated and that her mental status was "oriented." (T. 388-510). These records lack any notation that Plaintiff suffered hallucinations from the steroid injections.

Likewise, Plaintiff's own testimony about experiencing hallucinations or psychosis is equivocal. At the first administrative hearing, Plaintiff did not mention suffering from any hallucinations as a result of the steroid injections; rather, she testified that they caused her "anxiety, insomnia, flu-like symptoms, fatigue, [and an] irregular heartbeat;". (T. 85). During her second hearing, Plaintiff testified that a steroid injection "makes [her] *feel like* [she is] hallucinating at times." (T. 116 (emphasis supplied)). When Plaintiff was asked to confirm whether she hallucinated after receiving injections, she responded contradictorily as follows: "No, but I don't - I just – you do. Yeah, I guess you could say I was." (Id.).

Even assuming for the sake of argument that there is substantial evidence supporting Plaintiff's view, that is not the dispositive question. Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). Rather, this Court "must decide whether substantial evidence supports the ALJ's decision." Id. (citing Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld."); (other citation and footnote omitted). Here, the Court must conclude that the record contains substantial evidence supporting the ALJ's decision that the side-effects of Plaintiff's steroid-injections were not disabling.

However, based on certain aspects of the VE's testimony, the Court finds that the frequency and duration of Plaintiff's steroid injections raise the possibility that Plaintiff was disabled for a closed period of time based on the impact of her steroid-injections on her ability to complete a typical full-time workweek. The VE testified in part that an employee is expected to attend a minimum of 90 percent of her scheduled work time. (T. 131). He explained that if an employee were to miss two days of work per month, perhaps three to four months in a row, that was "probably about the time" that she is going to "draw attention to [herself] and get a warning." (T. 132). The VE testified that an employee is allowed to be off-task up to 9 minutes in an hour, or 15 percent of the work day, and that even 10 minutes off-task each and every hour would put an employee below an 85 percent productivity rate, which is normally not acceptable. (T. 133). Here, the record indicates that during the relevant period, Plaintiff received multiple IV steroid injections, with administration lasting one to two hours each. (See T. 435, 430, 443, 452-53, 472, 505, 515, 521, 526-28, 529, 537, 539, 842, 865, 877, 895). Moreover, a number of those steroid injections occurred while Plaintiff was receiving in-home nursing care. For instance, Plaintiff received IV steroid injections during her February 4, April 1, April 10, and April 22, 2014, home care visits. (T. 842, 865, 877, 895). On remand,

the ALJ is directed to consider whether Plaintiff meets the definition of disability for a closed period from the onset date through the date of the last steroid injection, or some portion of that period, based on the administration of IV steroid treatments, some of which occurred while she was homebound.

**IV. The ALJ Did Not Properly Consider Plaintiff's Visual Impairment (Plaintiff's Argument 3)**

Plaintiff also argues the ALJ "failed to address the effects of [her] visual impairment on her ability to sustain work" at step two of the sequential evaluation. (Pl's Br. at 24).

The regulations provide that at step two of the sequential evaluation, the ALJ is required to determine whether a claimant's medically determinable impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if "it significantly limits an individual's physical or mental abilities to do basic work activities." SSR 96-3P, 1996 WL 374181, at *1 (July 2, 1996). A claimant bears the burden of proving that she has a severe impairment. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). However, "a step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe." Poles v. Berryhill, No. 17-CV-1471884, 2018 WL 1471884, at *3 (W.D.N.Y. Mar. 26, 2018) (citing Rye v. Colvin, No. 14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016)).

-17-

Here, substantial evidence does not support that Plaintiff's visual impairment was severe. As the Commissioner notes, Plaintiff's visual acuity was 20/25, even during a flare-up of MS in March 2014. (T. 750). Dr. Norah Lincoff assessed Plaintiff with myopia and mild nerve optic atrophy. (T. 752). Dr. Lincoff subsequently treated Plaintiff in October 2014 and reported that her vision in both her right and left eyes was 20/20. (T. 732). Plaintiff reported that she had "no loss of vision." (T. 730). Dr. Lincoff also indicated that Plaintiff had "no recurrence of optic neuropathy." (T. 734). Likewise, on October 8, 2015, Plaintiff displayed 20/20 vision in both her right and left eyes. (T. 808). Plaintiff reported that her eyes blurred "on and off occasionally." (T. 806). Dr. Lincoff indicated that Plaintiff had "no recurrence of optic neuropathy" and did not mention any limitations with respect to her near visual acuity. (T. 810). Neither Dr. Hojnacki nor Dr. Lincoff reported that Plaintiff has difficulties with her visual acuity. They did note that Plaintiff continues to have problems with dry eyes, had occasional blurred vision, and was near-sighted, but, as discussed below, these conditions do not change the ALJ's conclusion at step five.

Plaintiff notes that, according to the Dictionary of Occupational Titles and Selected Characteristics of Occupations, both of the occupations which the ALJ found she could perform require "frequent" near visual acuity up to two-thirds of the day

(Pl.'s Reply (Docket No. 11) at 7 (citing DICOT 209.687-026 (G.P.O.), 1991 WL 671813; DICOT 299.667-014 (G.P.O.), 1991 WL 672642)). The VE testified that "frequent" near acuity was required to perform the occupations of a mailroom clerk and stock checker. (T. 129). However, Plaintiff has not demonstrated that her visual acuity was diminished to any significant extent. Accordingly, she has not shown that the ALJ's step-five finding concerning her ability to perform other work in the national economy is unsupported by substantial evidence. Thus, the Court concludes that the failure to address Plaintiff's visual impairment at step two was, at most, a harmless error that does not require remand. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) (holding that a harmless error exists in the Social Security context when the "application of the correct legal principles to the record could lead to only one conclusion").

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the Court finds that the Commissioner's decision is legally erroneous and unsupported by substantial evidence. Accordingly, the Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. In particular, on

remand, the Commissioner is directed to (1) consider the new and material evidence submitted by Plaintiff to the Appeals Council; (2) recontact Dr. David Hojnacki for clarification of his opinion and clinical findings; and (3) consider whether Plaintiff meets the disability criteria for a closed period from the onset date through the last date of her receipt of a steroid injection based on the effects of such treatment on her ability to complete the attendance requirements of full-time competitive employment. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   October 29, 2018
         Rochester, New York